MARYLAND:
IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY

| | |
|---|---|
| WALTER R. DAVIS, <br><br> 5311 Sovereign Place, <br> Frederick, Maryland 21703, <br><br> Plaintiff, <br><br> v. <br><br> BIMBO FOODS BAKERIES DISTRIBUTION, LLC f/k/a BIMBO FOODS BAKERIES DISTRIBUTION, INC., <br><br> 255 Business Center Drive, <br> Horsham, Pennsylvania 19044, <br><br> SERVE: <br><br> CSC-Lawyers Incorporating Service Company, <br> 7 St. Paul Street, Suite 820, <br> Baltimore, Maryland 21202, <br><br> Defendant. | Case No. _____ |

## COMPLAINT

Walter R. Davis ("Mr. Davis"), by counsel, for its Complaint against Bimbo Foods Bakeries Distribution, LLC, formerly known as Bimbo Foods Bakeries Distribution, Inc. (either, the "Defendant"), states as follows:

### Parties

1. Mr. Davis is an individual who resides at 5311 Sovereign Place, Frederick, Maryland 21703.

2. Upon information and belief, Defendant is a Delaware limited liability company with its principal place of business located at 255 Business Center Drive, Horsham, Pennsylvania 19044.

3. Upon information and belief, Defendant was previously known as Bimbo Foods Bakeries Distribution, Inc., and subsequently converted the business into a limited liability company known as Bimbo Foods Bakeries Distribution, LLC. Defendant is registered to do business in Maryland.

### Jurisdiction and Venue

4. This Court has subject matter over this matter pursuant to Md. Const. Art. IV § 20 and Md. Code, Courts and Judicial Proceedings, § 1-501.

5. Venue is proper in this Court pursuant to Md. Code, Courts and Judicial Proceedings, § 6-201, because Defendant carries on a regular business in Montgomery County, Maryland.

6. This Court may exercise personal jurisdiction over the Defendant pursuant to Md. Code, Courts and Judicial Proceedings, § 6-102 because Defendant is registered to do business in the State of Maryland, maintains a registered agent in the State, and is able to be served with process in this State. This Court may also exercise personal jurisdiction over the Defendant pursuant to Md. Code, Courts and Judicial Proceedings, § 6-103 because Defendant transacts business and performs work in the State of Maryland, and Defendant contracts to supply goods and food in the State.

### Factual Background

7. Upon information and belief, Defendant enters into distribution agreements with independent distributors, who sell Defendant's grocery products to third parties for resale to consumers. Pursuant to these distribution agreements, independent distributors obtain exclusive distribution rights of Defendant's products within certain defined territories. Independent distributors are able to re-sell their exclusive distribution routes to third-party buyers, who then acquire the exclusive distribution rights.

8. Prior to January 10, 2011, Defendant entered into a distribution agreement with David M. Price ("Mr. Price"), whereby Mr. Price acquired the exclusive distribution rights to distribute certain of Defendant's grocery products in a certain defined territory in Maryland.

9. On or about January 10, 2011, Mr. Davis and Mr. Price entered into a Bill of Sale whereby Mr. Davis purchased Mr. Price's exclusive distribution rights over this defined territory in Maryland. A copy of this Bill of Sale is attached hereto as **Exhibit A**.

10. On or about January 10, 2011, Mr. Davis and Defendant also entered into a Bill of Sale whereby Mr. Davis purchased from Defendant one additional account location that was not included in Mr. Price's territory. A copy of this Bill of Sale is attached hereto as **Exhibit B**.

11. On or about January 10, 2011, Mr. Davis and Defendant entered into a Distribution Agreement (the "Agreement"), governing Mr. Davis' exclusive distribution rights over the territories acquired from Defendant and Mr. Price. A copy of the Agreement is attached hereto as **Exhibit C**.

12. Pursuant to the Agreement, Mr. Davis acquired "Distribution Rights," defined therein as "the sole right to sell and distribute Products to Outlets in the Sales Area . . . ."

13. The Agreement defines Mr. Davis' exclusive "Sales Area" as "that geographic area within which [Mr. Davis] owns the Distribution Rights, as more specifically described in Schedule A attached hereto and made a part hereof." Schedule A to the Agreement outlines the Sales Area based on a series of roadway intersections, and covers a portion of Frederick County, Maryland.

14. Schedule A to the Agreement also expressly lists certain account locations (a) inside of this outlined area over which Mr. Davis does not have Distribution Rights, and (b) outside of this outlined area over which Mr. Davis does have Distribution Rights.

15. The Agreement defines the "Products" as "all those bakery products as specifically defined and described in Schedule B attached hereto and made a part hereof." Schedule B further

3

defines the Products to generally include certain fresh baked goods sold under certain names and trademarks.

16. The Agreement defines "Outlets" as "those purchasers of products as specifically defined and described in Schedule B attached hereto and made a part hereof." Schedule B further defines "Outlets" as follows:

> As referred to in §1.2, Outlets shall mean all retail stores restaurants and institutional accounts which purchase Products by store door delivery. Outlets shall not be deemed to include street vendors or any Outlets or parts thereof, including concessions and vending machines therein, serviced by methods other than store door delivery, or bakery thrift stores established or operated by, or contracted with [Defendant] or its affiliates for the primary purpose of selling damaged, stale, off code products, although such bakery thrift stores may also sell any products, fresh or otherwise, which [Defendant] or its affiliates, in their sole discretion, deem appropriate to support that purpose.

17. The Agreement states that Defendant shall "assist in the development of new Outlets."

18. The Agreement permits Mr. Davis to sell his Distribution Rights, with proceeds from the sale belonging to Mr. Davis.

19. On or about December 3, 2012, Mr. Davis and Defendant entered into an Amendment to Bill of Sale and Distribution Agreement, whereby the parties agreed to amend Schedule B of the Agreement (the "Amendment"). A copy of the Amendment is attached hereto as **Exhibit D**. The amended Schedule B modified the list of Products, but did not otherwise modify the Agreement.

20. The general process Mr. Davis follows in carrying out his duties and obligations under the Agreement is as follows:

    a. Mr. Davis possesses a portable electronic device onto which Defendant uploads a "suggested" order of Products to be delivered to each Outlet, based on past sales data;

    b. On each day that Mr. Davis works, Defendant uploads to Mr. Davis' portable electronic device a suggested order of Products for each Outlet. Mr. Davis is not required to

4

use Defendant's suggested orders, but instead retains discretion on the quantity of each Product to deliver to each Outlet;

  c. On each morning that Mr. Davis works, he drives his vehicle to Defendant's distribution warehouse in Frederick, Maryland, and loads the desired Products into his vehicle;

  d. Mr. Davis then drives his vehicle with the Products to each Outlet, and delivers those Products to the Outlet. For Outlets that are grocery stores, Mr. Davis also stocks the Products on the appropriate shelf space; and

  e. Mr. Davis is compensated by Defendant on a weekly basis in the form of a "settlement" check that is based on a percentage of the total sales revenue of each Product sold to each Outlet.

21. In about February 2020, Mr. Davis learned that Kroger – the nation's largest grocery retailer – intended to construct and open a grocery fulfillment center at 71906 Geoffrey Way in Frederick County, Maryland (the "Fulfillment Center").

22. Upon information and belief, the Fulfillment Center will become operational in Spring or Summer 2022.

23. Once operational, the Fulfillment Center will fulfill online Kroger grocery orders purchased by consumers.

24. Once operational, the Fulfillment Center will be located in the Sales Area, as defined in the Agreement.

25. Once operational, the Fulfillment Center will purchase Products, as defined in the Agreement.

26. Once operational, the Fulfillment Center will receive Products via substantially the same method as the method by which Mr. Davis distributes Products to his current Outlets.

27. Once operational, the Fulfillment Center will accept delivery of Products via store door delivery. Even if the Fulfillment Center is not considered to accept delivery via store door delivery, Mr. Davis has the right of first refusal under the Agreement to service Outlets through alternative means.

28. Once operational, the Fulfillment Center will constitute an Outlet, as defined in the Agreement.

29. Once operational, Mr. Davis is entitled to Distribution Rights over the Fulfillment Center pursuant to the Agreement.

30. After learning of the new Fulfillment Center, Mr. Davis inquired with Defendant about receiving Distribution Rights over the Fulfillment Center. Mr. Davis was initially informed verbally by a warehouse manager that Mr. Davis should be entitled to the Distribution Rights over the Fulfillment Center. Subsequently, Mr. Davis was verbally informed repeatedly that he would not receive Distribution Rights over the Fulfillment Center. However, Defendant consistently failed or refused to provide any written explanation of why Mr. Davis was not entitled to Distribution Rights over the Fulfillment Center.

31. On November 2, 2021, Mr. Davis emailed Defendant, inquiring why he would not be entitled to Distribution Rights over the Fulfillment Center. A copy of this correspondence is attached hereto as **Exhibit E**.

32. On November 8, 2021, Defendant responded to Mr. Davis' email via letter, asserting that Mr. Davis is not entitled to Distribution Rights over the Fulfillment Center because the Fulfillment Center is not an "Outlet" under the Agreement since "it will NOT be a retail store, restaurant, or institutional account (per the definition of Outlet) and it will NOT purchase [Defendant's] products via store door delivery (again, per the definition of Outlet)." A copy of this correspondence is attached hereto as **Exhibit E**.

33. On November 9, 2021, counsel for Mr. Davis sent Defendant a letter outlining Mr. Davis' position and the provisions of the Agreement entitling Mr. Davis to Distribution Rights over the Fulfillment Center, and demanding that Defendant agree to Mr. Davis' entitlement to such Distribution Rights. A copy of this correspondence is attached hereto as **Exhibit E**.

34. On November 24, 2021 Defendant's counsel issued a letter to Mr. Davis' counsel, again asserting that the Fulfillment Center does not constitute an Outlet. Defendant's letter also stated:

> you should fairly warn your client that the only realistic opportunity he has of serving this fulfillment center (once it is finished being built) is if [Defendant] chooses to offer him a contract do to so. . . He needs to understand that there are no additional words that can be said or legal actions that can be taken that will back us off our position.

A copy of this correspondence is attached hereto as **Exhibit E**.

35. At all times, Mr. Davis fully and properly performed his obligations under the Agreement, and continues to do so. Mr. Davis is not in breach of any term of the Agreement.

36. Defendant's failure to recognize Mr. Davis' Distribution Rights over the Fulfillment Center constitutes a material breach of the Agreement.

37. Defendant's failure to "assist in the development of new Outlets" constitutes a material breach of the Agreement.

38. Upon information and belief, Defendant has previously recognized other independent distributors' exclusive distribution rights over similar fulfillment centers. In particular, Defendant previously recognized separate independent distributors' exclusive distribution rights over a Giant Peapod fulfillment center located in Maryland.

39. Mr. Davis estimates that servicing the Fulfillment Center, as permitted under the terms of the Agreement, would increase his annual earning under the Agreement by approximately $265,000.00 per year.

40. Mr. Davis estimates that if his Distribution Rights over the Fulfillment Center are recognized, the potential sale value of his Distribution Rights would increase by approximately $510,000.00.

## COUNT I
### Breach of Contract

41. Mr. Davis re-alleges and incorporates by reference the allegations contained in the foregoing Paragraphs.

42. Mr. Davis and Defendant entered into the Agreement, a valid and enforceable contract which is binding upon both parties.

43. Under the terms of the Agreement, Mr. Davis is entitled to exclusive Distribution Rights over all Outlets that purchase Products in Mr. Davis' Sales Area.

44. The Fulfillment Center, once operational, will constitute an Outlet over which Mr. Davis has exclusive Distribution Rights under the Agreement.

45. Defendant has failed to recognize Mr. Davis' Distribution Rights over the Fulfillment Center and to allow Mr. Davis to service the Fulfillment Center once operational.

46. Defendant's actions constitute a material breach of the Agreement.

47. Defendant's actions will cause monetary harm to Mr. Davis in the approximate amount of $265,000.00 per year for the life of the Fulfillment Center, plus approximately $510,000.00 in lost potential sale value of Mr. Davis' Distribution Rights, but in an exact amount to be proven at trial.

48. Defendant's actions entitle Mr. Davis to injunctive relief both (i) preventing Defendant from servicing the Fulfillment Center via any other method, distributor, or employee; and (ii) requiring Defendant to recognize Mr. Davis' Distribution Rights over the Fulfillment Center.

**WHEREFORE**, Mr. Davis requests that the Court:

(a) issue an order enjoining Defendant from servicing the Fulfillment Center via any other method, distributor, or employee, and requiring Defendant to recognize Mr. Davis' Distribution Rights over the Fulfillment Center;

(b) in the alternative, award Mr. Davis an amount to be proven at trial but no less than the sum of $4,485,000.00, constituting Mr. Davis' lost annual revenue, plus the decreased value of Mr. Davis' Distribution Rights, due to Defendant's breach of the Agreement;

(c) award Mr. Davis his reasonable attorneys' fees and costs incurred in enforcing his rights under the Agreement; and

(d) grant such other and further relief as the Court deems appropriate.

## COUNT II
### Anticipatory Breach of Contract

49. Mr. Davis re-alleges and incorporates by reference the allegations contained in the foregoing Paragraphs.

50. Mr. Davis and Defendant entered into the Agreement, a valid and enforceable contract which is binding upon both parties.

51. Under the terms of the Agreement, Mr. Davis is entitled to exclusive Distribution Rights over all Outlets that purchase Products in Mr. Davis' Sales Area.

52. The Fulfillment Center, once operational, will constitute an Outlet over which Mr. Davis has exclusive Distribution Rights under the Agreement.

53. Defendant has failed to recognize Mr. Davis' Distribution Rights over the Fulfillment Center and allow Mr. Davis to service the Fulfillment Center once operational. Further, Defendant has stated its definite, absolute, and unequivocal refusal to recognize Mr. Davis' Distribution Rights over the Fulfillment Center as required by the Agreement.

54. Defendant's actions constitute a material anticipatory breach of the Agreement.

55. Defendant's actions will cause monetary harm to Mr. Davis in the approximate amount of $265,000.00 per year for the life of the Fulfillment Center, plus approximately $510,000.00 in lost potential sale value of Mr. Davis' Distribution Rights, but in an exact amount to be proven at trial.

56. Defendant's actions entitle Mr. Davis to injunctive relief both (i) preventing Defendant from servicing the Fulfillment Center via any other method, distributor, or employee; and (ii) requiring Defendant to recognize Mr. Davis' Distribution Rights over the Fulfillment Center.

**WHEREFORE**, Mr. Davis requests that the Court:

(a) issue an order enjoining Defendant from servicing the Fulfillment Center via any other method, distributor, or employee, and requiring Defendant to recognize Mr. Davis' Distribution Rights over the Fulfillment Center;

(b) in the alternative, award Mr. Davis an amount to be proven at trial but no less than the sum of $4,485,000.00, constituting Mr. Davis' lost annual revenue, plus the decreased value of Mr. Davis' Distribution Rights, due to Defendant's breach of the Agreement;

(c) award Mr. Davis his reasonable attorneys' fees and costs incurred in enforcing his rights under the Agreement; and

(d) grant such other and further relief as the Court deems appropriate.

## COUNT III
### Declaratory Judgment

57. Mr. Davis re-alleges and incorporates by reference the allegations contained in the foregoing Paragraphs.

58. Mr. Davis and Defendant entered into the Agreement, a valid and enforceable contract which is binding upon both parties.

59. Under the terms of the Agreement, Mr. Davis is entitled to exclusive Distribution Rights over all Outlets that purchase Products in Mr. Davis' Sales Area.

60. The Fulfillment Center, once operational, will constitute an Outlet over which Mr. Davis has exclusive Distribution Rights under the Agreement.

61. Defendant has failed to recognize Mr. Davis' Distribution Rights over the Fulfillment Center and allow Mr. Davis to service the Fulfillment Center once operational.

62. Defendant's failure to recognize Mr. Davis' concrete and legal Distribution Rights over the Fulfillment Center and to allow Mr. Davis to service the Fulfillment Center once operational, constitutes an uncertainty or controversy that exists between the parties to the Agreement, creating the possibility of imminent or inevitable litigation.

63. Defendant's failure to recognize Mr. Davis' Distribution Rights over the Fulfillment Center and allow Mr. Davis to service the Fulfillment Center once operational, constitutes a justiciable controversy.

64. Mr. Davis seeks a determination and declaration of rights under the Agreement, specifically that the Fulfillment Center constitutes an Outlet over which Mr. Davis has exclusive Distribution Rights under the Agreement.

**WHEREFORE**, Mr. Davis requests that the Court:

(a) issue a determination and declaration of rights under the Agreement, that the Fulfillment Center constitutes an Outlet over which Mr. Davis has exclusive Distribution Rights under the Agreement;

(b) issue an order enjoining Defendant from servicing the Fulfillment Center via any other method, distributor, or employee, and requiring Defendant to recognize Mr. Davis' Distribution Rights over the Fulfillment Center;

(b) in the alternative, award Mr. Davis an amount to be proven at trial but no less than the sum of $4,485,000.00, constituting Mr. Davis' lost annual revenue, plus the decreased value of Mr. Davis' Distribution Rights, due to Defendant's breach of the Agreement;

(c) award Mr. Davis his reasonable attorneys' fees and costs incurred in enforcing his rights under the Agreement; and

(d) grant such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Mr. Davis demands a jury trial on all issues so triable.

**DATED: February 4, 2022**                     **Respectfully submitted,**

*/s/ Daniel R. Miktus*
Daniel R. Miktus
AKERMAN LLP
750 9th Street, N.W., Suite 750
Washington, DC 20001
Tel:    (202) 393-6222
Email: daniel.miktus@akerman.com
*Counsel for Walter R. Davis*