**IN THE UNITED STATES DISTRICT COURT**
**<u>FOR THE DISTRICT OF MARYLAND</u>**

| | | |
|---|---|---|
| **WALTER DAVIS,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. DLB-22-663** |
| **BIMBO FOODS BAKERIES DISTRIBUTION, LLC,** | * | |
| | * | |
| **Defendant.** | | |

**<u>MEMORANDUM OPINION</u>**

Walter Davis was a distributor for Bimbo Foods Bakeries Distribution, LLC ("BFBD"), a baked goods manufacturer. Davis's contract with BFBD granted him exclusive rights to distribute BFBD products to stores and restaurants in Frederick County, Maryland. But when Kroger opened an automated grocery fulfillment center—a warehouse operated by robots—in Frederick, BFBD cut Davis out of the equation and used a different distributor to service the fulfillment center. Davis sued.

After a four-day bench trial,[1] the Court found that BFBD had breached its contract with Davis, entered a declaratory judgment that Davis had the exclusive right to distribute BFBD products to the Kroger fulfillment center, and awarded Davis $452,343.41 in damages plus court costs. The Court based its damages award on a projection of how much revenue Davis would have earned servicing the fulfillment center over the next 15 years had BFBD not breached the contract.

In January 2026, the Kroger fulfillment center closed. BFBD now has filed a motion to amend the judgment under Rule 60(b)(6), arguing that the fulfillment center's closure renders the

---

[1] The Honorable Peter J. Messitte presided over the bench trial. Judge Messitte died in January 2025. This case has been reassigned to the undersigned.

Court's damages award unreasonable. ECF 97. The motion is fully briefed. ECF 97-1, 102, & 105. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the following reasons, the motion is denied.

## I.    Background

The Court presumes the parties' familiarity with the procedural history and the trial evidence and provides only a summary of both.

At the time of trial, Davis was a 46-year veteran of the grocery industry. ECF 72, at 2. Davis had a contract with BFBD, a baked goods manufacturer, to distribute its products to grocery stores and other retailers in Frederick County. *Id.* at 2–3. Specifically, the contract granted Davis the exclusive right to distribute BFBD products to the county's "Outlets," defined as "all retail stores restaurants and institutional accounts which purchase Products by store door delivery." *Id.* at 3. Davis earned revenue based on the difference between the rate at which he accepted products from BFBD for distribution and the wholesale price paid by the Outlet. *Id.* at 4–5. The contract had no termination date. *Id.* at 25.

In February 2020, Davis learned that Kroger was planning to open an automated grocery fulfillment center in Frederick. *Id.* at 5. The fulfillment center was a warehouse operated by robots that fulfilled online orders and supplemented the inventories of nearby stores. *Id.*; *see also* ECF 95-2, at 4. Even though the fulfillment center was in Davis's territory, BFBD decided to use another distributor to service the fulfillment center. ECF 72, at 5. So, Davis sued BFBD in state court for breach of contract, anticipatory breach of contract, and declaratory judgment. ECF 3, ¶¶ 41–64. BFBD removed the case to federal court, ECF 1, and the matter proceeded to a bench trial in November 2023. ECF 72, at 1.

At trial, the parties disputed whether the Kroger fulfillment center qualified as an "Outlet" under the contract. ECF 72, at 6. BFBD argued that it did not because it was not a "retail store" and did not "purchase Products by store door delivery." *Id.* Davis disagreed. He argued that the fulfillment center was a "retail store" because it "s[old] products to consumers" and that it purchased BFBD products by "store door delivery" because Davis could deliver products to it. *Id.* Thus, Davis argued, the fulfillment center was an "Outlet," and he had exclusive distribution rights over it. *Id.*

The parties also disputed the appropriate remedy if the Court found in Davis's favor on liability. Davis's front-line request for relief was an injunction that would require BFBD to use him—and only him—to service the fulfillment center, plus a declaratory judgment and damages for the period BFBD had deprived him of his contractual rights. ECF 67, at 57. In the alternative, Davis requested money damages based on his lost revenue as of the date of judgment; his anticipated future lost revenue arising from BFBD's breach over the next 15 years; and the decreased potential sale value of his distribution rights. *Id.* at 74. BFBD objected to Davis's request, arguing (among other things) that an injunction would require long-term judicial supervision, *see* ECF 68, at 34, and disputing Davis's entitlement to damages, *see* ECF 72, at 18–19, 24.

On June 25, 2024, the Court rendered judgment in Davis's favor. ECF 73. The Court found for Davis on his breach of contract claim and awarded him $452,343.41 in damages plus court costs.[2] *Id.* at 1. The Court also entered a declaratory judgment that the fulfillment center qualified under the contract as an "Outlet" over which Davis had exclusive distribution rights, but it denied Davis's request for injunctive relief. *Id.* at 1–2. An injunction was not warranted in part because,

---

[2] Davis withdrew his claim for anticipatory breach of contract. ECF 73, at 1.

3

as BFBD had argued, it "would require future monitoring and intervention by the Court[.]" ECF 72, at 18. The Court based its damages calculation on an estimate of how much money Davis would have made servicing the fulfillment center over the next 15 years, minus fuel expenses. *Id.* at 25–27. Fifteen years was a reasonable projection, the Court reasoned, because Davis, who was then in his mid-sixties, could reasonably be expected to keep earning revenue until he was 80; Kroger had "been around since 1883 with an ever-increasing stable of food distribution facilities"; and automated fulfillment centers such as the one in Frederick were "unquestionably the wave of the future" and "here to stay[.]" *Id.* at 26.

BFBD appealed. On appeal, BFBD challenged the Court's interpretation of the contract but did not contest the Court's damages calculation. *See Davis v. Bimbo Foods Bakeries Distrib., LLC*, No. 24-2264, 2026 WL 66748, at *1 (4th Cir. Jan. 8, 2026). On January 8, 2026, the United States Court of Appeals for the Fourth Circuit affirmed. *Id.*

As sometimes happens, the Court's damages projection proved too rosy. Automated fulfillment centers—or at least, the Kroger fulfillment center in Frederick—were not here to stay after all. The same month the Fourth Circuit affirmed the judgment, Kroger, struggling to turn a profit in its e-commerce business, closed the fulfillment center. ECF 97-3, at 18; ECF 97-5, at 3. And BFBD saw an opportunity. A few weeks after the fulfillment center closed, on January 28, 2026, BFBD filed a motion to amend the judgment under Rule 60(b)(6) of the Federal Rules of Civil Procedure, arguing that the Court's damages calculation—predicated on the assumption that the fulfillment center would remain open for 15 years—can no longer stand. ECF 97. BFBD argues that in light of the fulfillment center's premature closure, the Court's damages award grants Davis "free money" that "do[es] not compensate [him] for any genuine loss." ECF 97-1, at 6. BFBD asks the Court to reduce the damages award from $452,343.41 to $88,651.05, which would compensate

4

Davis only for the 1,073 days the fulfillment center was open. *Id.* at 7. Davis opposes the motion, arguing that BFBD has not met the stringent standard for relief under Rule 60(b)(6). ECF 102.

## II.    Standard of Review

Pursuant to Rule 60(b), the Court may "relieve a party . . . from a final judgment, order or proceeding" if the party shows that one of six grounds for reconsideration exists. Fed. R. Civ. P. 60(b). Those grounds are:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

*Id.* Preliminarily, however, the party must "cross[] [an] initial threshold" by establishing "(1) timeliness, (2) a meritorious defense, (3) a lack of unfair prejudice to the opposing party, and (4) exceptional circumstances." *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 299 (4th Cir. 2017) (citing *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993)).

BFBD relies on Rule 60(b)(6), the rule's "catchall" provision.[3] *See BLOM Bank SAL v. Honickman*, 605 U.S. 204, 206 (2025). Rule 60(b)(6) allows a court to grant relief from judgment

---

[3] Though BFBD also claims that the fulfillment center's closure "is precisely the type of newly discovered evidence contemplated by Rule 60(b)(2)," *see* ECF 97-1, at 14 (capitalization altered), it wisely disavows any reliance on Rule 60(b)(2) as the basis for its motion, *see* ECF 105, at 5. A

because of "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). However, Rule 60(b)(6) "may be invoked in only 'extraordinary circumstances' when the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)–(5)." *Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011) (en banc) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11, 864 (1988)). This is a "stringent standard[.]" *Honickman*, 605 U.S. at 214. "In a vast majority of the cases finding that extraordinary circumstances do exist . . . , the movant is completely without fault for his or her predicament[.]" *Id.* at 212 (first alteration in original) (quoting 12 J. Moore *et al.*, *Moore's Fed. Prac.* § 60.48[3][b], at 60–188 (3d ed. 2024)). A motion filed under Rule 60(b)(6) must be "made within a reasonable time." *Justus v. Clarke*, 78 F.4th 97, 106 (4th Cir. 2023) (quoting Fed. R. Civ. P. 60(c)(1)).

## III.   Discussion

The parties contest virtually every aspect of BFBD's motion: whether it was timely; whether BFBD has a meritorious defense; whether the relief requested would cause Davis unfair prejudice; whether exceptional circumstances exist; and whether BFBD has identified extraordinary circumstances.[4] For the Court's purposes, however, the analysis begins and ends

---

Rule 60(b)(2) motion must be filed within one year of the challenged judgment, *see* Fed. R. Civ. P. 60(c)(1), and BFBD filed its motion approximately a year and a half after the Court entered judgment on June 25, 2024. Thus, if BFBD's motion were brought under Rule 60(b)(2), it would be untimely. Moreover, even if timely, such a motion would not satisfy Rule 60(b)(2)'s substantive requirements. The fulfillment center closed after trial, and "[e]vents occurring after trial are not 'newly discovered evidence' within the meaning of [Rule] 60(b)(2)." *Lowe v. Mercedes Benz of N. Am., Inc.*, Nos. 96-1501 & 95-3038, 103 F.3d 118, 1996 WL 694433, at *3 (4th Cir. Dec. 5, 1996) (unpublished table disposition).

[4] The caselaw is somewhat unclear about whether a party seeking Rule 60(b)(6) relief must make *both* a threshold showing of "exceptional circumstances" and a showing of "extraordinary circumstances" or whether these two inquiries merge. *See, e.g.*, *SEC v. Tsao*, 317 F.R.D. 31, 36 n.2 (D. Md.) ("The 'exceptional' or 'extraordinary' circumstances requirement is sometimes framed as a prerequisite to Rule 60(b) relief in general, and sometimes more narrowly described as an element of the Rule 60(b)(6) catchall."), *aff'd*, 671 F. App'x 157 (4th Cir. 2016). The Court need

with extraordinary circumstances. BFBD has not shown that the fulfillment center's closure is the type of "extraordinary circumstance" warranting relief under Rule 60(b)(6). Thus, its motion must be denied.

What happened in this case is far from extraordinary. The Court rendered a damages award based on a reasonable prediction about future events. Judges and juries do that all the time. But judges are not clairvoyant. Sometimes, despite their best efforts, they predict wrong. If that were a good enough reason to upset a final damages award under Rule 60(b)(6), litigation would be endless. Losing parties could run back to court, even years after a judgment, to claim that this or that unforeseen factual development rendered the judgment unreasonable. And the converse is equally true. What if the fulfillment center had stayed open for 20 years and Davis had worked until he was 85 instead of 80? Would Davis be entitled to amend the judgment under Rule 60(b)(6) to claim five extra years' worth of damages? It is easy to see how BFBD's argument, if accepted, could undermine the finality of virtually any money judgment that requires judges or juries to base their damages calculation on future events. The Court must avoid such a perversion of Rule 60(b)(6). *See Honickman*, 605 U.S. at 213 (explaining that Rule 60(b)(6)'s "strict" "extraordinary circumstances" requirement "is essential if the finality of judgments is to be preserved") (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)).

The parties do not cite any on-point Fourth Circuit case, and there does not appear to be one. But the Sixth Circuit's decision in *Davis ex rel. Davis v. Jellico Community Hospital, Inc.*, 912 F.2d 129 (6th Cir. 1990), is factually similar, and its reasoning is persuasive. There, the plaintiff—by a next friend—brought a medical malpractice action against a doctor and the hospital

---

not resolve this question because, in any event, BFBD must show extraordinary circumstances to obtain Rule 60(b)(6) relief.

that employed him, claiming that he had suffered permanent brain damage due to the doctor's failure to timely diagnose a subdural hematoma. *Id.* at 131. Throughout trial, the plaintiff was in a coma. *Id.* The jury awarded him $2.5 million in damages after hearing evidence that he likely would have a normal lifespan, though the district court cautioned the jury that the plaintiff might die sooner. *Id.* at 131–32. And that is what happened. Just over a month after the jury rendered its verdict, the plaintiff died. *Id.* at 131. So, the defendants sought relief under Rules 59 and 60. *Id.* at 131–32. The district court denied their request, and the defendants appealed, claiming that in light of the plaintiff's untimely death, the court should have held a new trial on damages as a matter of "substantial justice." *Id.* at 133.

The Sixth Circuit was unpersuaded. The *Davis* Court determined that, of Rule 60(b)'s subsections, only Rules 60(b)(2) and 60(b)(6) could potentially apply. *Id.* at 132. And neither fit the bill. Rule 60(b)(6) did not warrant relief, the court explained, because "[d]eath of a judgment plaintiff following so shortly after a jury award of damages based on an expected life span not realized is rare, but it is not the sort of 'extraordinary circumstance' contemplated by Rule 60(b)(6)." *Id.* at 136. Nor, the court explained, could the defendants prevail under Rule 60(b)(2). "To hold that a plaintiff's death following a jury verdict is the sort of 'substantial injustice' requiring the reopening of cases or award of new trials under the Federal Rules of Civil Procedure," the court reasoned, "would be to invite a morass of appeals from defendants in cases where the plaintiffs did not survive an 'acceptable' amount of time following the entry of final judgment" and also "would require reopening cases where a plaintiff's life span *exceeded* the expectation presented to the jury." *Id.* at 135 (emphasis added). Such a rule would destroy finality and invite perpetual litigation. "The opportunity for 'perfect justice' based on 20/20 hindsight," the court

concluded, "is not worth the strain on the judicial system resulting from potentially incessant scrutiny of damage awards." *Id.* at 136.

So too here. This case is (fortunately) far less tragic, but the Sixth Circuit's sound rationale is no less applicable. There, as here, post-trial events disproved a predictive damages calculation. There, a plaintiff died young shortly after receiving damages on the assumption that he would have a normal lifespan; here, a warehouse closed early after the Court awarded damages on the assumption it would stay open longer. Here, as in *Davis*, the defendant seeks "perfect justice" based on "20/20 hindsight": the damages it believes the Court *would* have awarded if it had a crystal ball. *See id.* And here, as in *Davis*, the unanticipated change in the circumstances underpinning the fact-finder's damages calculation does not constitute an extraordinary circumstance warranting relief under Rule 60(b)(6).[5]

BFBD's counterarguments fail to persuade. Tellingly, although the Sixth Circuit's decision in *Davis* features prominently in Davis's opposition, BFBD almost completely fails to engage with its reasoning. Instead, it dismisses *Davis* as "out-of-circuit" and claims that *Davis*, along with other cases the plaintiff cites, "involved defendants seeking [an] adjustment[] to [a] damages award[] based on amended 'future revenue projections' or projected future earnings." ECF 105, at 11. "That," BFBD proclaims, "is the opposite of the situation presented here, because 'future revenue projections' are uncertain in the same way that the Court's prior unjust judgment based on 15 years

---

[5] Indeed, the "windfall"—to use BFBD's term—to the plaintiff in *Davis* was arguably even greater than it is here. The plaintiff in *Davis* was in his mid-20s and received damages designed to last for the rest of his life; then he died a month later. *See* 912 F.2d at 131–32. Here, the Court awarded damages on the assumption that the fulfillment center would stay open for 15 years, or approximately 5,478 days; it stayed open for 1,073 days, a little less than 20% of that time. *See* ECF 97-1, at 7. The disparity between expectation and reality was significant but not nearly as stark as the one in *Davis*. If *Davis* did not present an extraordinary circumstance, this case certainly does not.

of anticipated lost revenue was uncertain" and "BFBD's motion seeks to correct an unjust damages award by *eliminating* uncertainty." *Id.* In other words, because the fulfillment center now has closed, BFBD argues, the Court now can be certain of exactly how much revenue Davis actually lost; it no longer needs to predict.

This argument falls flat. First, BFBD mischaracterizes *Davis*. The defendants did not seek Rule 60(b) relief in that case because an expert revised her projection of the plaintiff's future earnings. They sought Rule 60(b) relief because the plaintiff died much sooner than the jury had assumed. So, when presented with the defendants' Rule 60(b) motion, the *Davis* Court knew with certainty what the jury could not have known at trial: the plaintiff's lifespan. Yet the Sixth Circuit still concluded that Rule 60(b)(6) relief was not warranted. The same is true here. Like the defendants in *Davis*, BFBD seeks Rule 60(b) relief because the fulfillment center shut down far sooner than the Court predicted. And like the court in *Davis*, this Court now knows what the presiding trial judge could not have known: how long the fulfillment center actually would stay open. And just as the *Davis* Court concluded that Rule 60(b)(6) relief was not warranted under its facts, the Court concludes the same here. *Davis* is not, as BFBD claims, distinct from this case.

Second, *Davis* is not an outlier. *Davis*'s reasoning is consistent with and drew heavily on another case that this Court finds persuasive, *Boyd v. Bulala*, 672 F. Supp. 915 (W.D. Va. 1987), *aff'd in part on other grounds, rev'd in part on other grounds, & questions certified*, 877 F.2d 1191 (4th Cir. 1989), *certified questions answered*, 389 S.E.2d 670 (Va. 1990), *remanded on other grounds*, 905 F.2d 764 (4th Cir. 1990) (concluding denial of Rule 60(b)(6) motion was not abuse of discretion). In *Boyd*, another medical malpractice case, the plaintiffs—two parents and their infant daughter Veronica—sued the doctor who had mishandled Veronica's birth and left her with substantial birth defects. Shortly after the jury returned an $8.3 million verdict that was based in

part on Veronica's anticipated future medical expenses, Veronica died. 672 F. Supp. at 922. So, the defendant moved for relief under (among other things) Rule 60(b)(6), arguing that the damages award should be reduced. *Id.* The district court disagreed, reasoning that "[h]ad Veronica lived longer than expected, she certainly could not have returned to court to demand that her judgment be increased" and that the defendant could not "be allowed to profit from the child's premature death by securing a reduction in the judgment."[6] *Id.* at 923. Similar reasoning compels a similar result here.

Trying a different tack, BFBD argues that its position is supported by the Fourth Circuit's decision in *Compton v. Alton S.S. Co.*, 608 F.2d 96 (4th Cir. 1979). *Compton* bears little resemblance to this case. There, the Fourth Circuit concluded that the defendant was entitled to relief from a substantial monetary judgment under Rule 60(b)(6) where the facts before the district court when it entered judgment "abundantly established . . . beyond any controversy" that it lacked statutory authority to render a substantial portion of that award. *Id.* at 101. That is not what happened here. There is no question that when the Court awarded the damages that Davis sought, it had the authority to do so. *Compton* is simply inapplicable here.

BFBD next argues that, although "sometimes damages awards must be based on reasonable projections," in this case "there can be no dispute that the Court's projection" that the fulfillment

---

[6] The Fourth Circuit ultimately concluded that the district court's denial of Rule 60(b)(6) relief was not an abuse of discretion, though it relied on different grounds than the district court. The Fourth Circuit concluded that the plaintiffs' damages had to be significantly reduced to comply with Virginia's state-statutory cap on medical malpractice damages, so the court remanded for entry of a lower judgment. 905 F.2d at 769. The court reasoned that because the original jury award had so greatly exceeded the cap, a new trial on damages was unlikely to yield an award any less than the cap. *Id.* at 768. "Essentially for [that] reason[]," the court concluded, Veronica's premature death was "not an exceptional [circumstance] warranting relief from that judgment" under Rule 60(b)(6); a do-over of the damages phase would be a waste of time and the result would be all but preordained. *Id.* at 769. The court did not pass one way or another on the correctness of the district court's reason for denying relief under Rule 60(b)(6).

center would remain operational for 15 years "was *unreasonable*[.]" ECF 105, at 11. Even if an unreasonable damages award could be grounds for relief under Rule 60(b)(6), the damages award in this case was not unreasonable. In predicting that the fulfillment center was "here to stay," the Court relied on several pieces of evidence: the fact that Kroger had "opened several automated fulfillment centers across the country" since March 2021; a news article from the previous year reporting that Kroger was planning to build 20 such centers in the United States; and an article that heralded warehouse automation as "a cornerstone of modern supply chain management[.]" ECF 72, at 26 (citing ECF 68-1, at 5–6; Ocado Grp., *Our partnership with Kroger*, https://www.ocadogroup.com/about-us/osp-partners/kroger; and Alexis Mizell-Pleasant, *A Quiet Revolution: The Future of Warehouse Automation*, Supply & Demand Chain Executive (Sept. 7, 2023), https://www.sdcexec.com/warehousing/automation/article/22871949/a-quiet-revolution-the-future-of-warehouse-automation). Based on this evidence, it was reasonable for the Court to predict that the fulfillment center would have a longer lifespan than it did. If BFBD truly thought the Court's damages estimate was unreasonable, it could have made that argument on appeal, but it did not. BFBD's after-the-fact effort to seek extraordinary post-judgment relief from a reasonable damages award fails.

BFBD has not met its burden to show that extraordinary circumstances justify amending the judgment under Rule 60(b)(6).

## IV.    Conclusion

BFBD's motion to amend the judgment is denied. A separate Order follows.

Date: June 22, 2026

_____
Deborah L. Boardman
United States District Judge